UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACY O. MERCHANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15CV01652NCC |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tracy O. Merchant ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 13), Defendant has filed a brief in support of the Answer (Doc. 18), and Plaintiff has filed a reply brief (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on January 13, 2011 (Tr. 256-68). Plaintiff was initially denied on March 29, 2011, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") on April 11, 2011 (Tr. 128-39). After a hearing, by decision

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

dated November 30, 2012, the ALJ found Plaintiff not disabled (Tr. 101-20). On January 8, 2014, the Appeals Council granted Plaintiff's request for review and remanded his case to the ALJ (Tr. 121-25). A second hearing was held on March 27, 2014 and, by decision dated April 24, 2014, the ALJ again found Plaintiff not disabled (Tr. 10-31, 32-56). On October 9, 2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-3). As such, the ALJ's April 24, 2014 decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2013, and had not engaged in substantial gainful activity since February 1, 2010, the alleged onset date of disability (Tr. 15). The ALJ found Plaintiff has the severe impairments of fracture of the left tibia, by history; history of bilateral inguinal hernia repairs; depression; posttraumatic stress disorder (PTSD); and questionable history of mild impairment in intellectual functioning, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following limitations (Tr. 17). He will only occasionally be able to climb stairs and ramps; he will be unable to climb ropes, ladders, and scaffolding; he will only occasionally be able stoop, kneel, crouch, and crawl; he will be limited to no repetitive use of foot controls on the left side; he will need to avoid concentrated exposure to extreme cold; and he will need to avoid concentrated exposure to unprotected heights (*Id.*). Plaintiff is able to understand, remember, and carry out at least simple instructions and non-detailed tasks (*Id.*).

Plaintiff is able to respond appropriately to supervisors and co-workers in a task oriented setting where contact with others is casual and infrequent (*Id.*). Plaintiff can perform work at normal pace without production quotas (*Id.*). Plaintiff should not work in a setting which includes constant/regular contact with the general public (*Id.*). Plaintiff should not perform work which includes more than infrequent handling of customer complaints (*Id.*). Plaintiff should not perform work which requires more than limited reading skills (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including production worker (Dictionary of Occupational Titles ("DOT")[2] occupational code 739.684-094) and cleaner/laundry worker (DOT occupational code 302.685-010) (Tr. 23-24). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 24). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical

---

[2] U.S. Department of Labor (4th ed. rev.1991). The Social Security Administration takes administrative notice of the DOT. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC, and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v.*

*Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

5

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff alleges the ALJ inappropriately relied on vocational expert ("VE") testimony that was in conflict with the DOT in ways that were not recognized or addressed by either the ALJ or the VE (Doc. 13 at 7). Second, Plaintiff argues that the ALJ erred in assigning the opinions of Dr. Syed Raza and Dr. Erickson T. Smith "minimal weight" because he failed to properly consider the mandatory factors for weighing treating physician opinions that are not considered controlling (*Id.* at 12). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Potential Conflict Regarding VE Testimony**

First, Plaintiff asserts that the ALJ inappropriately relied on VE testimony that was in conflict with the DOT in ways that were not recognized or addressed by either the ALJ or the VE (Doc. 13 at 7). Specifically, Plaintiff argues that the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including production worker (DOT occupational code 739.684-094) and cleaner/laundry worker (DOT occupational code 302.685-010), which require reading instructions (*Id.* at 9-10). Plaintiff, relying on *Moore v. Colvin,* 769 F.3d 987 (8th Cir. 2014) and *Latragna v. Colvin,* No. 4:14 CV 496 JMB, 2015

WL 4771630 (E.D. Mo. Aug. 12, 2015), argues that this reading requirement creates an "apparent conflict" with the ALJ's RFC which restricted Plaintiff from work which requires more than limited reading skills (*Id.*).

In his RFC determination, the ALJ restricted Plaintiff from work which requires more than limited reading skills. The ALJ thereafter determined that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including production worker (DOT occupational code 739.684-094) and cleaner/laundry worker (DOT occupational code 302.685-010). The ALJ also indicated, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (Tr. 24). In doing so, the ALJ relied on the testimony of vocational expert Dr. Michael Mckeenman ("Dr. Mckeenman") (*See* Tr. 49-56).

During the March 27, 2014 hearing, the ALJ presented Dr. Mckeenman with one hypothetical which included the following limitation: "[Plaintiff] also has limited reading skills so that any job that he might be able to work would not involve a significant amount of reading" (Tr. 52-53). Dr. Mckeenman asked for clarification, "meaning that should not be a critical component of the job?" (Tr. 53). The ALJ responded in the affirmative (*Id.*). Dr. Mckeenman then testified that Plaintiff could perform "production type work" (DOT occupational code 739.684-094), packaging work (DOT occupational code 784.687-042), and a cleaning job (DOT occupational code 302.685-010) (*Id.*). At the end of the ALJ's questioning of the Dr. Mckeenman, the ALJ asked the Dr. Mckeenman, "Has your testimony today been consistent with the DOT and Selected Characteristics of Occupations?" (Tr. 54). Dr. Mckeenman

responded in the affirmative (*Id.*). Plaintiff did not raise any objections to Dr. Mckeenman's testimony at the hearing.

Social Security Ruling 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the DOT. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ must ask the VE if there is a conflict. *Id.* If there is an apparent conflict, the ALJ must then "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2-*3. The ALJ must also explain in his decision how he resolved the conflict. *Id.* at *3. Accordingly, "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the [DOT] unless there is evidence in the record to rebut those classifications." *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (citing *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir.1997)).

In *Moore*, the claimant's RFC limited him to only occasional overhead reaching. 769 F.3d at 989. The VE testified that such a claimant could perform janitorial or cafeteria attendant work. *Id.* However, the VE failed to address the claimant's limitations on reaching when she recommended the job of "cafeteria attendant," which is defined in the DOT as involving frequent reaching. *Id.* The Eighth Circuit found that there was an "'apparent unresolved conflict' between the VE testimony and the DOT," and the ALJ failed to elicit a sufficient explanation to resolve that conflict. *Id.* at 989-90 (citing SSR 00-4p, 2000 WL 1898704, at *2-4). It was not sufficient in *Moore* to simply ask the VE if her testimony was consistent with the DOT. *Id.* at 990. As a result, the matter was remanded because "the Commissioner failed to meet her burden … [at] step five." *Id.* Similarly, largely relying on *Moore*, the Court in *Latragna* found an apparent unresolved conflict with the ALJ's RFC assessment when the plaintiff was limited to

8

"simple verbal instructions," but the VE testified that plaintiff could do the job of cafeteria attendant which required the plaintiff to "[a]pply common sense understanding, to carry out detailed but uninvolved written oral (sic) instructions." *Latragna*, 2015 WL 4771630, at *18.

The Court finds that the reading requirements of the jobs identified by the VE, and relied upon by the ALJ in his determination, do not create an apparent, unresolved conflict with the Plaintiff's RFC. The Eighth Circuit directs the Court to treat the DOT as "generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). Both the jobs of production worker and cleaner/laundry worker,[3] as described in the DOT and its companion volume, the Selected Characteristics of Occupations ("SCO"),[4] require the language skills of General Educational Development language level of 1 ("GED-L-1") (Docs. 13-2 at 2, 13-3 at 2). The lowest level of language development contemplated by the DOT, a GED-L-1 requires an individual to have the ability to "[r]ead at a rate of 95-120 words per minute" (*Id.*). *See also* DOT, App. C—Components of the Definition Trailer, 1991 WL 688702 (describing the General Educational Development scale). Both jobs also require the ability to "[a]pply common sense understanding, to carry out detailed but uninvolved written [or][5] oral instructions" (Docs. 13-2 at

---

[3] Although the VE identified three positions, the ALJ only relied on two of the three positions in making his determination. Accordingly, the Court will only address the two positions addressed by the ALJ in his opinion.

[4] Plaintiff provided exhibits purporting to reflect the requirements of the DOT and SCO for the job listings the VE provided – inspector-packer (DOT number 784.687-042), production worker (DOT number 739.684-094), and cleaner/laundry worker (DOT occupational code 302.685-010) (Docs. 13-1, 13-2, 13-3). In her response to Plaintiff's arguments, the Commissioner does not dispute the veracity or accuracy of Plaintiff's exhibits. Accordingly, the Court relies on the exhibits in considering this matter.

[5] *See* Dictionary of Occupational Titles, 739.684-094 Lamp-Shade Assembler (4th ed. rev. 1991); Dictionary of Occupational Titles, 739.684-094 Lamp-Shade Assembler (4th ed. rev. 1991) (properly including "or").

1, 13-3 at 1). Therefore, although the ALJ restricted Plaintiff from work requiring more than limited reading skills, the ALJ did not restrict Plaintiff from all reading, and the reading requirement, while more than none, is the lowest level reading requirement possible. *C.f. Burton v. Astrue*, No. 2:11-CV-174-GZS, 2012 WL 1184425, at *2 (D. Me. Apr. 6, 2012), report and recommendation adopted, No. 2:11-CV-174-GZS, 2012 WL 1415616 (D. Me. Apr. 24, 2012) (internal quotation marks omitted) (finding a conflict when an ALJ determines plaintiff to be functionally illiterate but, per the DOT, the three jobs recommended by the VE required a GED-L-1, which, with respect to reading, entails "recognizing the meaning of 2,500 (two- or three-syllable) words, reading at a rate of 95–120 words per minute, and comparing similarities and differences between words and between series of numbers."). Furthermore, while the positions both require Plaintiff to carry out detailed but uninvolved instructions, the DOT indicates that these instructions can be "written *or* oral" (emphasis added) (*See* DOT, *supra* note 4). Finally, to the extent Plaintiff asserts that the ALJ failed to address any topics about which the DOT and SCO are nonspecific, the Court notes that SSR 00-4p only applies to "apparent actual conflicts." *Latragna*, 2015 WL 4771630, at *18.

**B. The Opinions of Dr. Syed Raza and Dr. Erickson T. Smith**

Next, Plaintiff asserts the ALJ erred in assigning the opinions of Dr. Syed Raza ("Dr. Raza") and Dr. Erickson T. Smith ("Dr. Smith") "minimal weight" because he failed to properly consider the mandatory factors for weighing treating physician opinions[6] that are not considered controlling (Doc. 13 at 12).

---

[6] The Parties do not dispute that Dr. Raza and Dr. Smith are Plaintiff's treating physicians (*See* Doc. 13 at 2 and Doc. 18 at 5).

In a Mental Medical Source Statement dated February 6, 2012 (Tr. 852-55), Dr. Raza, Plaintiff's treating psychiatrist, opined Plaintiff has extreme[7] limitations in his functioning with regard to his activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 852-53). Specifically, Dr. Raza indicated extreme limitations in Plaintiff's ability to: behave in an emotionally stable manner; maintain reliability, relate to family, peers, or caregivers; interact with strangers or the general public; accept instructions or respond to criticism; maintain socially acceptable behavior; maintain attention and concentration for extended periods; perform at a consistent pace with an unreasonable number and length of breaks; sustain an ordinary routine without special supervision; and respond to changes in work setting (*Id.*). Dr. Raza also indicated that Plaintiff could not sustain the following for more than 0-2 hours five days per week: apply commonsense understanding to carry out simple one- or two-step instructions; interact appropriately with coworkers; interact appropriately with supervisors; and interact appropriately with the general public (Tr. 854). Dr. Raza further opined Plaintiff's psychologically based symptoms would cause him to miss three or more days of work a month, and to be late to work or need to leave work early three or more times a month (Tr. 854-55).

In a Mental Medical Source Statement dated February 3, 2012 (Tr. 848-51), Dr. Smith, Plaintiff's treating psychologist and therapist, similarly opined Plaintiff has extreme[8] limitations in his functioning with regard to his activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 848-49). Specifically, Dr. Smith indicated extreme limitations in Plaintiff's ability to: behave in an emotionally stable manner; maintain reliability; relate to family, peers, or caregivers; interact with strangers or the general public; accept

---

[7] Extreme is defined on the form as "Limitation that totally precludes the individual's ability to usefully perform the activity or to sustain performance of the activity" (Tr. 852).

[8] *See supra* note 6 (Tr. 848).

instructions or respond to criticism; maintain socially acceptable behavior; maintain attention and concentration for extended periods; perform at a consistent pace with an unreasonable number and length of breaks; sustain an ordinary routine without special supervision; and respond to changes in work setting (*Id.*). Dr. Smith also indicated that Plaintiff could not sustain the following for more than 0-2 hours five days per week: apply commonsense understanding to carry out simple one- or two-step instructions; interact appropriately with coworkers; interact appropriately with supervisors; and interact appropriately with the general public (Tr. 850). Dr. Smith further opined Plaintiff's psychologically based symptoms would cause him to miss three or more days of work a month, and to be late to work or need to leave work early three or more times a month (Tr. 850-51).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.' " *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds that the ALJ gave proper weight to the opinions of Dr. Smith and Dr. Raza. The ALJ addressed the medical source statements together and afforded the opinions of

Dr. Smith and Dr. Raza "minimal weight" (Tr. 22). Although the ALJ did not address all of the non-controlling factors found in 20 C.F. R. §§ 404.1527(c), 416.927(c), [9] the ALJ is not required to cite specifically to the regulations but need only clarify whether he discounted the opinions and why. *Kientzy v. Colvin*, No. 4:15 CV 707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)). In this case, the ALJ provided a detailed inquiry of the nearly identical medical source statements. The ALJ found the opinions "indicated the claimant to be with marked to extreme limitations of functioning due to emotional/mental impairment" but that the record did not support the degree of limitation advanced (Tr. 22). Specifically, "[t]he claimant routinely has been assessed throughout his claimed disability as functioning at a level commensurate with a [Global assessment of functioning ("GAF")][10] ranging from 60 to 70, and he is longitudinally with relatively unremarkable mental status findings" (*Id.*). Indeed, the ALJ provides a lengthy analysis detailing

---

[9] If a treating physician's opinion is not given controlling weight, the amount of weight given to it "is to be governed by a number of factors [contained in 20 C.F.R. § 416.927(c) (applying to claims for DIB) or 20 C.F.R. 416.3927(c) (applying to claims for SSI)] including the examining relationship, the treatment relationship, consistency, specialization, and other factors." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

[10] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32. *See also Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting *Kohler v. Astrue*, 546 F.3d 260, 263 (2d Cir. 2008) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) (alterations in original). *See also Goff*, 421 F.3d at 789, 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 51-60 supported ALJ's limitation to simple, routine, repetitive work).

the support from the record for these conclusions (*See* Tr. 19-21).  For example, the ALJ notes, and the record supports, that during Plaintiff's treatment at the Hopewell Center in May, August, and November 2013, physicians indicated that Plaintiff had an anxious and worried mood and, while this is supportive of some degree of limitation, during this same period, Plaintiff's overall diagnostic impression remained unchanged and he continued to function at a GAF level of 60.  Physicians also noted an absence in any abnormalities of appearance, demeanor, speech, thought processing, thought content, orientation, or cognitive functioning (Tr. 20, 1377-78, 1383-84, 1388-89).  Accordingly, the ALJ properly offered a sufficient basis to give the opinion "non-*substantial* weight" in addition to "[non-]*controlling* weight."  *See Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015) (emphasis in original) (internal citations omitted) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion inconsistent with the record or another [of the physician's own] opinion[s].").

Finally, as is the case here, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 27th day of March, 2017.

                                         /s/ Noelle C. Collins
                                         NOELLE C. COLLINS
                                         UNITED STATES MAGISTRATE JUDGE